IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

RAYTOSHA ELLIOTT,

Defendant.

CRIMINAL CASE NO.

1:14-CR-00012-AT-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court are Defendant Raytosha Elliott's motion [Doc. 28] to sever counts pursuant to Rules 8(a) and 14 Federal Rule of Criminal Procedure and motion [Doc. 29] for a bill of particulars.  The Government, except for agreeing to identify unindicted co-conspirators, opposes the motions.  [Docs. 36 and 37].

## I.    Motion to Sever Counts

Defendant seeks to sever Counts 1-3 from Counts 4-10 of the indictment contending that Counts 1-3 charge a conspiracy and wire fraud scheme involving the Georgia Department of Defense whereas Counts 4-10 charge a conspiracy and wire fraud scheme involving a company named Baumueller-Nuermont Corporation.  [Doc. 28 at 1].  Plaintiff seeks a severance initially pursuant to Rule 8(a) contending that

Counts 1-3 are misjoined with Counts 4-10.  And, in the alternative, that Rule 14 requires severance due to compelling prejudice.  [Id. at 2-7].

    **a.**    **Rule 8 Severance**

To the extent Defendant is relying on Rule 8(a), that reliance is misplaced because she is charged in the indictment along with a co-Defendant, Lakeysha Ellis. See United States v. Kopituk, 690 F.2d 1289, 1312 (11th Cir. 1982) ("It is well established that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses, whereas Rule 8(b) governs in cases involving multiple defendants."); United States v. Damiani, 2011 WL 7574628, at *17 (N.D. Ga. September 23, 2011), adopted at 2012 WL 983726 (N.D. Ga. March 20, 2012) ("Rule 8(b), as opposed to Rule 8(a), governs the joinder of multiple defendants in a single indictment."); and see United States v. Irizarry, 341 F.3d 273, 287 (3rd Cir. 2003) ("most courts have held that Rule 8(b) applies exclusively to issues of joinder of multiple defendants and that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses").  The court will, therefore, evaluate Defendant's claim of misjoinder under Rule 8(b).[1]

---

[1]The test for evaluating the appropriateness of joinder of counts and of defendants is "with one exception, more or less the same.  The critical difference between the two subsections is that Rule 8(a) allows joinder of offenses against a

"Federal Rule of Criminal Procedure 8(b) is a pleading rule."  <u>United States v. Scrushy</u>, 237 F.R.D. 464, 468 (M.D. Ala. 2006).  "Under Rule 8(b) . . ., '[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'"  <u>United States v. Talley</u>, 108 F.3d 277, 279 (11th Cir. 1997) (quoting Fed. R. Crim. P. 8(b) (pre-amendment);[2] <u>accord</u>

---

single defendant that 'are of the same or similar character,' even if such offenses do not arise out of the same series of acts or transactions.  Under Rule 8(b), offenses may not be joined unless they arise out of a series of acts or transactions, regardless of how similar they may be in character."  <u>Kopituk</u>, 690 F.2d at 1312 (citation omitted); <u>see also</u> <u>United States v. Hersh</u>, 297 F.3d 1233, 1241 (11th Cir. 2002) (Rule 8(a) allows "joinder of offenses that 'are of the same or similar character,' even if such offenses do not arise at the same time or out of the same series of acts or transactions") (citation omitted).  Accordingly, joinder under Rule 8(a) is broader than that under Rule 8(b). <u>And see</u> <u>United States v. Adigun</u>, 2011 WL 2919253, at *10 n.42 (N.D. Ga. May 4, 2011), <u>adopted by</u> 2011 WL 2198308 (N.D. Ga. June 3, 2011).  The court will apply Rule 8(b) even though Defendant Ellis is pleading guilty and will be a witness for the Government at trial.  [<u>See</u> Doc. 36 at 3 n.1].

[2]The 2002 amendment to Rule 8(b) was not substantive.  The provision currently provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).

United States v. Paul, 194 Fed. Appx. 792, 796 (11th Cir. 2006) (same). "In order to meet the same series of acts or transaction requirement of Rule 8(b)[,] the government must demonstrate that the acts alleged are united by substantial identity of facts and/or participants[;] . . . [however, e]ach participant need not participate in all acts or even know the other participants' roles in the ventures." United States v. Holloway, 971 F.2d 675, 679 (11th Cir. 1992) (citations and internal quotation marks omitted); see also United States v. Aiken, 76 F. Supp. 2d 1346, 1351 (S.D. Fla. 1999) ("Joinder of multiple defendants is proper whenever there is a common thread between the actions charged against them.") (citation and internal quotation marks omitted).

The government may demonstrate that joinder of defendants is proper by either relying on the indictment and/or by making a proffer of evidence that satisfies Rule 8(b). See United States v. Dominguez, 226 F.3d 1235, 1241 (11th Cir. 2000) ("If the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joinder, then a severance should be ordered.");[3] accord

---

[3]In Dominguez, the Eleventh Circuit Court of Appeals noted that, although prior cases had stated that reference should be made to the "indictment only" when deciding whether Rule 8 joinder was proper, those cases involved attempts on appeal to evaluate the evidence actually admitted at trial to invalidate a determination, previously made based on the four corners of the indictment, that Rule 8 joinder was proper. Id. at 1240-41. The "indictment only" rule is applicable to prevent after-the-fact evaluation of joinder but the rule "is not applicable to situations when the evidence proffered by

4

Paul, 194 Fed. Appx. at 796-97 (same).  Finally, in evaluating whether joinder of defendants is proper, "Rule 8 is construed broadly in favor of the initial joinder."  Paul, 194 Fed. Appx. at 796; see also Dominguez, 226 F.3d at 1238 (same); and see United States v. Souffrant, 517 Fed. Appx. 803, 811 (11th Cir. 2013) ("Rule 8(b) permits joinder of defendants in the same indictment or information in order to achieve judicial economy and other important benefits.").

The indictment alleges in Count 1 that Defendants Elliott and Ellis conspired from May 2008 though April 2012 to commit the following offenses:  18 U.S.C. § 666(a)(1)(A) by embezzling, stealing, obtaining by fraud or converting to their use property of the Georgia Department of Defense ("GDD"); 18 U.S.C. § 666(a)(1)(B) by corruptly soliciting and demanding for their benefit and accepting and agreeing to accept a thing of value in connection with the business of the GDD; 18 U.S.C. § 666(a)(2) by corruptly giving, offering or agreeing to give something of value with the intent to influence an agent of the GDD relating to the business thereof; and 18 U.S.C. §§ 1343 and 1346 by devising and participating in a scheme to defraud the citizens of Georgia and the GDD of their right to the faithful and honest services of Defendant

───────────────

the government before trial or adduced during trial shows that initial joinder was *proper* even though the indictment may not have explicitly stated the connection between the charges."  Id. at 1241 (emphasis in original).

5

Elliott, an employee of the GDD, all in violation of 18 U.S.C. § 371.  [Doc. 1, Count 1].  As background, the indictment alleges that from May 2007 through April 2012, Defendant Elliott was an employee of the GDD, an Engineering Operations Manager, and that her job duties included overseeing all no-bid purchase orders for projects under $5,000.  [Id.].

In this capacity, Defendant Elliott awarded contracts under $5,000 to vendor companies created by her friends, including Defendant Ellis, in exchange for illegal bribes and kickbacks, such as, one-half of the value of an awarded contract.  Defendant Ellis created a company, Total Source Solution, LLC ("TSS"), and Defendant Elliott created a company named Tech Group Investments, LLC ("TGI").  Both companies were sham businesses and used to received monies fraudulently obtained from the GDD.  TSS received seventeen contracts totaling $75,000, for work not performed, and transferred approximately half of that money to TGI or Defendant Elliott's credit union account as kickbacks to Defendant Elliott.   The funds obtained were spent by Defendants on personal expenses.  [Id.].  The overt acts set forth in Count 1 detail the flow of funds from GDD to the Bank of America account for TSS and then from that account either to the credit union account for Defendant Elliott or the BB&T account for TGI.  [Id.].

6

Count 2, charging a wire fraud pursuant to 18 U.S.C. §§ 1343 and 1346, alleges that Defendants Elliott and Ellis, as a part of the scheme to defraud explained in Count 1, on January 21, 2009, caused to be transmitted by means of wire communication in interstate commerce a wire transfer in the amount of $9,348 from the Bank of America account for TSS to the credit union account for Defendant Elliott.  [Id., Count 2].  And Count 3, charging bribery pursuant to 18 U.S.C. § 666(a)(1)(B), alleges that on January 21, 2009, Defendant Elliott, being an agent and employee of GDD, accepted a bribe in the amount of $9,348, in connection with the scheme set forth in Count 1.  [Id., Count 3].

Count 4 of the indictment charges another conspiracy, occurring from March 2010 through May 2011 and alleges that Defendants Elliott and Ellis conspired to defraud Baumueller-Nuermont Corporation ("BNC") by committing offenses in violation of 18 U.S.C. § 1343.  [Doc. 1, Count 4].  Defendant Ellis worked as an accountant for BNC, and her duties included paying bills on behalf of BNC. Defendant Ellis had signature authority on checks issued by BNC.  The indictment alleges that Defendant Ellis used her position to fraudulently funnel funds to TSS and to TGI issuing checks bearing her signature and her forgery of the signature of BNC's Vice President.  Defendant Ellis also wired funds from BNC to the bank accounts for

7

TSS and TGI.  To cover the payments, Defendant Ellis disguised the recipients of the payments and falsified employment records.  In the course of executing this conspiracy, approximately $85,000 was stolen from BNC.  [Id.].  The overt acts set forth in Count Four detail the wire transfer of funds from BNC to Defendant's Elliott's company, TGI.  [Id.].  All of this conduct was alleged to be in violation of 18 U.S.C. § 371.  [Id.].  Counts 5 through 10 are the substantive wire fraud counts for the wire transfers of funds from BNC to TGI, from April 9, 2010, through July 2, 2010, and are alleged to be in violation of 18 U.S.C. § 1343.  [Doc. 1, Counts 5-10].

The allegations in the indictment establish that the two charged conspiracies involve "substantial identity of facts and/or participants . . . ."  Holloway, 971 F.2d at 679; see also Souffrant, 517 Fed. Appx. at 811 ("there must be a logical relationship between each of the [offenses] joined" in the indictment).  As the Government points out, both of the named Defendants are charged in both of the conspiracies which overlapped in time, and in both of the conspiracies, Defendants utilized the same sham business entities, transferring the illegally obtained funds via the same bank accounts, to conduct the criminal activities.  [Doc. 36 at 5-7].  The object of both conspiracies was the same, that is, to enrich Defendants by funneling fraudulently obtained funds into their sham businesses.  [Id.].  Likewise, the same *modus operandi* was utilized by

8

Defendants in engaging in the criminal activities, that is, in each conspiracy, a Defendant used her position with her respective employer to illegally obtain the employer's funds.  In each case, contracts and records were falsified to cover the payment of funds not lawfully owed to Defendants' business entities.  [Id.].  And both Defendants utilized the funds deposited into the bank accounts of the sham businesses for personal expenses.  [Id.].

The cases cited by the Government, United States v. Curescu, 674 F.3d 735 (7th Cir. 2012), and United States v. Feyrer, 333 F.3d 110 (2nd Cir. 2003), support denial of Defendant's Rule 8 severance motion.  In Curescu, although, as the court noted, "the zoning and plumbing conspiracies were different, Curescu was at the heart of both, for both were conspiracies to obtain unlawful benefits for his building."  The court denied severance.  674 F.3d at 742.  Likewise, in this case, Defendants Elliott and Ellis were "at the heart of both" conspiracies which were intended to funnel unlawful funds into their sham businesses for their personal use.  In Feyrer, the court found that Rule 8 joinder was proper because the timing of the conspiracies overlapped, because there were common and central participants in both conspiracies and because "the two conspiracies shared a common plan, namely to generate income for Feyre, Wolff and the Symons Group brokers through fraudulent stock transactions."  333 F.3d at 114.

AO 72A
(Rev.8/82)

Similarly, in this case, the conspiracies were ongoing during the same time period and involved the same central participants, that is, Defendants, their sham businesses and their bank accounts, and there was a common plan to generate income for Defendants' sham businesses.

The cases cited by Defendant, United States v. Weaver, 905 F.2d 1466 (11th Cir. 1990), and United States v. Diaz-Munoz, 632 F.2d 1330 (5th Cir. Unit B 1980), do not support her argument for severance. As pointed out by the Government, those cases are factually distinguishable from the case before this court. [Doc. 36 at 8-9 (citing Adigun, 2011 WL 2194253, at 11 & n.44)]. Just as Judge Vineyard found in Adigun, Defendant Elliott's reliance on Diaz-Munoz is misplaced "because in that case, severance was warranted due to the fact that '[a]t trial . . . the government failed to produce any evidence tending to prove a connexity between the tax counts and the non-tax counts, and even conceded this point at oral argument.'" Adigun, 2011 WL 2194253, at *11 (citation omitted). However, as was true in Adigun, in this case, the Government has shown, as alleged in the indictment, a close connection between the charged offenses and a substantial identity of facts and participants. Id. In Adigun, the court found that in Weaver, joinder of marijuana and cocaine conspiracies was "improper because they 'did not overlap temporally.'" Id. (quoting Weaver, 905 F.2d

10

at 1477).  In this case, the charged conspiracies do overlap.  Additionally, as noted in

Adigun, unlike the situation in Weaver where the court considered the prejudice to the

defendants charged in only one of the two conspiracies, there is "no such danger to

[Defendant Elliott], given that she . . . is charged with the offenses that she argues

ought to be severed."  Adigun, 2011 WL 2194253, at *11 & n.44.

For these reasons, the court finds that the Government has sufficiently

established that the alleged unlawful conduct is part of "'the same series of acts or

transactions[,]'" Talley, 108 F.3d at 279 (citation omitted), and that "there is a common

thread between the actions" alleged in the indictment, Aiken, 76 F. Supp. 2d at 1351

(citation and internal quotation marks omitted) and, accordingly, finds that initial

joinder of Counts 1-3 with Counts 4-10 is proper and **RECOMMENDS** that

Defendant's Rule 8 motion for severance be **DENIED**.

### b.    Rule 14 Severance

Defendant contends that she will suffer compelling prejudice if the two

conspiracies are tried together because introduction of evidence of the each conspiracy

at the trial on the other conspiracy "will likely taint the jury."  [Doc. 28 at 6].  She

contends that listening to evidence of two fraud schemes involving two victims will

prevent the jury from "providing a fair and impartial verdict . . . ."  [Id.].  The

11

Government contends that Defendant's conclusory claim of compelling prejudice is not sufficient to require severance and that, in any event, at a separate trial of the charged conspiracies, evidence of the other conspiracy would be admissible which indicates that a severance should not be granted.  [Doc. 36 at 9-16].

Rule 14 states in pertinent part: "If it appears that a defendant or the government is prejudiced by a joinder of offenses . . . the court may order . . . separate trial of counts. . . ."  The Eleventh Circuit Court of Appeals stated, "We have long recognized that 'a District Court confronted with a Rule 14 Motion for Severance is required to balance any . . . prejudice [to the defendant] against the interests of judicial economy, a consideration involving substantial discretion.'"  United States v. Blankenship, 382 F.3d 1110, 1120 (11th Cir. 2004) (citation omitted).  To justify severance, a defendant must show compelling prejudice to the conduct of her defense resulting in fundamental unfairness.  See United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005); United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997).  "'This is a heavy burden, and one which mere conclusory allegations cannot carry.'"  United States v. Walser, 3 F.3d 380, 386 (11th Cir. 1993) (quoting United States v. Hogan, 986 F.2d 1364, 1375 (11th Cir. 1993)); see also United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007).

12

In order to establish that severance of counts is mandated pursuant to Rule 14, Defendant must not only show specific prejudice but also that "'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Blankenship, 382 F.3d at 1123 (citation omitted).  Additionally, Defendant must demonstrate "that a severance is the only proper remedy for that prejudice - jury instructions or some other remedy short of severance will not work." United States v. Lopez, 649 F.3d 1222, 1234 (11th Cir. 2011) ("Because limiting instructions usually will cure any prejudice resulting from a joint trial, . . . the Supreme Court has indicated that severances need be granted only if there is a serious risk that a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment about guilt or innocence' even if limiting instructions are given.") (citation omitted).  Defendant does not present any argument that a specific trial right would be compromised by the joint trial in this case.  [Doc. 28].

The second category mandating a severance, that is, preventing the jury from making a reliable judgment, applies generally to three situations.  "First, severance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant."  Blankenship, 382

13

F.3d at 1123.  However, this situation does not involve the mere disparity in the quality or amount of evidence introduced against one or more defendants and only applies where there is a minimal chance that limiting instructions will provide adequate relief. See Baker, 432 F.3d at 1236 (holding that "a defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants,' . . . even when the disparity is 'enormous'") (quoting Schlei, 122 F.3d at 984).  Severance is also mandated upon a showing of prejudice "in an extremely narrow range of cases in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." Blankenship, 382 F.3d at 1124.  And, "[f]inally, severance is required . . . where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." Id. at 1125.  None of these situations truly apply in this case, but Defendant appears to be arguing a variation of the first, that is, if the two conspiracies are tried together, she will be prejudiced by introduction of the evidence establishing that she engaged in not one but two fraudulent schemes impacting two victims.

14

To begin with, the court notes that Defendant Elliott offers no specific reasons why, in this case, actual prejudice will be the result of a joint trial or why, under the facts herein, limiting instructions are not adequate.  [Doc. 28].   Her general and conclusory allegations of prejudice do not carry Defendant's burden to establish compelling prejudice nor come close to demonstrating that the trial court's limiting instructions will not cure any potential prejudice.  In fact, Defendant does not address why limiting instructions would not cure any potential prejudice besides her citation to United States v. Jones, 16 F.3d 487 (2nd Cir. 1994).  [Doc. 28 at 6-7]. Her reliance on Jones is misplaced.  The facts in Jones involved the joinder for trial of a felon-in-possession charge with other offenses, which would require the introduction of Defendant's prior felony conviction and which the court found caused the defendant to suffer prejudice because the jury would not be able to ignore the spillover effect of such evidence.  Id. at 492.  Besides the facts in Jones being clearly distinguishable from those before this court, decisions of the Eleventh Circuit Court of Appeals have not followed Jones and have routinely failed to find compelling prejudice when a felon-in-possession charge is not severed from other counts in an indictment.  See, e.g., United States v. Mickens, 408 Fed. Appx. 253, 257 (11th Cir. 2011) (finding that the defendant did not establish compelling prejudice in the joint trial of drug charges and

felon-in-possession charge); United States v. Bennett, 368 F.3d 1343, 1351 (11th Cir. 2004) (the court affirmed denial of a Rule 14 motion to sever a felon in possession charge, § 922(g), from other charges in the indictment, which included, drug trafficking and manufacturing, 21 U.S.C. §§ 841 and 846, finding that several factors, including stipulation of prior conviction, lack of detail about prior convictions, and cautionary instructions, mitigated against undue prejudice), vacated on other grounds, 125 S. Ct. 1044 (2005); United States v. Miller, 255 F.3d 1282, 1289 (11th Cir. 2001) (the court upheld a trial court's denial of severance of a 18 U.S.C. § 922(g) (felon in possession of a firearm) charge from a 26 U.S.C. § 5861(d) (unregistered firearm) charge finding that the potential prejudice to the defendant was "mitigated by the fact that at trial he stipulated to his conviction").

The indictment in this case is not nearly so complex, nor the charges so complicated, that with proper jury instructions, the jury will not be able "to sort through the evidence and issues and reliably determine the guilt or innocence of [Defendant Elliott] on each charge" based solely on the evidence admissible against Defendant on the charge under consideration. Lopez, 649 F.3d at 1235; see also United States v. Jackson, 367 Fed. Appx. 55, 57 (11th Cir. 2010) ("Severance is not required if the possible prejudice may be cured by a cautionary instruction."); Hersh,

16

297 F.3d at 1244 (observing "that the district court affirmatively and repeatedly acted to reduce any unfair prejudice[,]" particularly instructing the jury on the limitation on the consideration of evidence as to each count of the indictment, appellate court found no error in refusal to grant Rule 14 severance).  Defendant has not established that a severance is required based on her conclusory claim of prejudice.

Additionally, as argued by the Government, if a severance of Counts 1-3 from Counts 4-10 is granted, there is a strong likelihood that evidence of each conspiracy would be admissible at the trial of Defendant on the other conspiracy because such evidence is inextricably intertwined or as extrinsic evidence of other bad acts pursuant to Fed. R. Evid. 404(b).  [Doc. 38 at 11-16].  For this reason, the Government contends that Defendant is not able to establish compelling prejudice.  See United States v. Baradji, 479 Fed. Appx. 301, 303 (11th Cir. 2012) (finding that the defendant "failed to show that evidence related to the conspiracy charge created a prejudicial spillover effect on his conviction for [another charge] because the challenged evidence would likely have been admissible at a severed trial under Rule 404(b) as evidence of his intent and absence of mistake").

17

Because evidence about each conspiracy is linked in time, participants and circumstances and will include the testimony of Defendant Ellis about how the conspiracies developed, her relationship with Defendant Elliott and Defendant Elliott's statements to her during the conspiracies, the Government contends that the two charged conspiracies are inextricably intertwined.   [Doc. 38 at 12-14].   In the alternative, the Government argues that evidence of each conspiracy is admissible under Fed. R. Evid. 404(b) because the evidence about simultaneously occurring conspiracies to defraud the GDD and BNC demonstrate Defendant Elliott's intent and knowledge and the absence of mistake on her part in engaging in the charged conduct. [Id. at 14-16].  The Government's overview of the evidence presents a strong case for finding that evidence about both conspiracies can be considered by the jury in determining Defendant's guilt or innocence on each charged conspiracy and the related substantive counts.

In United States v. Roberts, 464 Fed. Appx. 796 (11th Cir. 2012), the Eleventh Circuit Court of Appeals explained the interaction between intrinsic and extrinsic evidence in relationship to Rule 404(b).  The court stated,

> The structure of [Rule 404(b)] creates a two-step admissibility inquiry.
> First, an uncharged crime or bad act may be intrinsic to the case, and
> therefore outside the scope of Rule 404(b), if it is: "(1) an uncharged

18

> offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." . . .   Second, evidence regarding acts not part of the charged crimes but pertaining to the context, motive, and set-up of the crimes is properly admitted if it is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." . . . If the prior bad act or conviction is not intrinsic to the charged crime, Federal Rule of Evidence 404(b) will determine its admissibility.

Id. at 800 (citations omitted).  "Evidence is inextricably intertwined when 'it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'"  United States v. Stapleton, 455 Fed. Appx. 896, 897 (11th Cir. 2012).  And, while Rule 404(b) "extrinsic evidence of a prior bad act is not admissible as proof of a defendant's character or to show that a specific action is in conformity with that character[,]" such evidence "is admissible for other purposes, like proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Prophete, 522 Fed. Appx. 583, 585 (11th Cir. 2013) ("Extrinsic evidence is relevant 'where the state of mind required for the charged and extrinsic offenses is the same.'") (citation omitted).  As the Government notes, having pled not guilty, Defendant Elliott's intent is a material issue in this case.  See Roberts, 464 Fed. Appx. at 801 ("'In every conspiracy case . .

19

. a not guilty plea renders the defendant's intent a material issue. . . .  Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless [she] affirmatively takes the issue of intent out of the case.'") (citation omitted); United States v. McNair, 605 F.3d 1152, 1203 (11th Cir. 2010) (same).

The evidence, as outlined by the Government, concerning the overlapping conspiracies is intrinsic and involves actions taken and statements made by Defendants Elliott and Ellis during the two conspiracies, which this court has already determined to be part of the same series of transactions and having a substantial connection in participants and facts.  Testimony, especially that of Defendant Ellis, and evidence about the operation of the conspiracies, without attempting to extract parts of the evidence solely pertinent to one of the conspiracies, is necessary to complete the story about Defendant's conduct for the jury.  See Prophete, 522 Fed. Appx. at 586 (finding that evidence about the defendant's participation in an uncharged bank fraud scheme with the same co-conspirator was admissible because of its similarity to the charged bank fraud scheme, because the evidence assisted in explaining why the defendant was recruited to join the charged conspiracy, and because the evidence "formed 'an integral and natural part of the witness's accounts of the circumstances surrounding the offenses' for which Prophete was indicted") (citation omitted); United States v.

20

Benavides, 470 Fed. Appx. 782, 787-88 (11th Cir. 2012) (allowing the Government to introduce evidence of uncharged Medicare fraud because the "testimony described Benavides' participation in a scheme involving the same manner of fraud . . ., using the same type of company . . ., hiring the same intermediaries to bill the claims and launder the money . . ., and involving the same main players . . .").

Furthermore, if evidence about one of the conspiracies is deemed extrinsic to the other, that evidence is quite likely admissible pursuant to Rule 404(b). The evidence outlined by the Government is relevant to an issue other than Defendant Elliott's character, that is, the evidence relates to her intent and knowledge and ability to engage in the conduct, as well as to establish absence of mistake. The evidence is based upon a proffer of proof that will permit the jury to find that Defendant committed the extrinsic act, and the probative value of the evidence outweighs any potential prejudice to Defendant. See Roberts, 464 Fed. Appx. at 800.

While not dispositive of the Rule 14 severance issue before the court, the fact that this evidence would probably be admissible at separate trials of the charged offenses undermines Defendant's showing of compelling prejudice. See Baradji, 479 Fed. Appx. at 303. The court **RECOMMENDS** that Defendant's Rule 14 motion for severance be **DENIED**.

21

### c. Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 28] for severance be **DENIED**.

## II. Bill of Particulars

Defendant seeks a bill of particulars directing the Government to identify all unindicted co-conspirators involved in the conspiracies charged in Counts 1 and 4 of the indictment. [Doc. 29 at 2, 4]. The Government agrees to provide the names of any unindicted co-conspirators. [Doc. 37 at 1, 3]. To the extent that Defendant's motion seeks the names of unindicted co-conspirators, her request is granted.

Referencing the language in Count 1 of the indictment, "Ms. Elliott 'received approximately one-half the value of the contract awarded as a kickback for steering contracts to these vendors.' Doc. 1, p. 4, ¶ 6[,]" Defendant seeks the following information: "the name of the vendor allegedly paying this kickback; the date of the alleged kickback; and the amount of the alleged kickback." [Doc. 29 at 1-2]. And referencing this language also found in Count 1, "Ms. 'Elliott falsely certified that the work had been completed on these projects when in fact it had not been.' Doc. 1, p. 4, ¶ 6[,]" Defendant requests that "the Government identify the projects the Government alleges have not been completed yet were certified by Ms. Elliott as

22

complete." [Doc. 29 at 3].  Citing to a decision by the Third Circuit Court of Appeals,

United States v. Cefalu, 234 F.2d 522 (3rd Cir. 1956), and to a decision in the Eastern

District of New York, United States v. Finazzo, 2011 WL 3794076 (E.D. N.Y. August

24, 2011), Defendant asserts that the court should find that she is entitled to a list of

the vendors allegedly bribed and of the transactions which the Government contends

constitute kickbacks.  [Id. at 4-6].  The Government opposes these requests for a bill

of particulars.  [Doc. 37 at 4-7].

       "The purpose of a bill of particulars is to inform the defendant of the charge

against him [or her] with sufficient precision to allow him [or her] to prepare his [or

her] defense, to minimize surprise at trial, and to enable him [or her] to plead double

jeopardy in the event of a later prosecution for the same offense."  United States v.

Warren, 772 F.2d 827, 837 (11th Cir. 1985); see also United States v. Hassoun, 477 F.

Supp. 2d 1210, 1227-28 (S.D. Fla. 2007) ("A request for bill of particulars is, *inter*

*alia*, befitting in those instances where defendant seeks further clarity and precision

with regard to the charges that he is facing in order to adequately prepare a defense.").

"Generalized discovery is not the proper function of a bill of particulars."  Warren, 772

F.2d at 837 (citing United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)); see

also United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. 2006) (same).  While

23

the court "is vested with broad discretion in deciding whether a bill of particulars should be granted[,]" United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985), "'where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request . . . may constitute reversible error[,]'" id. (quoting United States v. Crippen, 579 F.2d 340, 349 (5th Cir. 1978)). The counts in the indictment, which have been set out in detail *supra*, sufficiently allege each charge and state the elements of each offense charged therein and provide details regarding the manner and means by which Defendants Elliott and Ellis conducted the charged offenses. [Doc. 1]. Defendant has not demonstrated that the information requested in the bill of particulars is essential to preparation of her defense at trial.

The court notes that the fact that discovery materials are provided to a defendant is an appropriate factor to consider in deciding whether a bill of particulars is warranted. See Roberts, 174 Fed. Appx. at 477 ("A bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery. . . ."); United States v. Al-Arian, 308 F. Supp. 2d 1322, 1359 (M.D. Fla. 2004) ("a bill of particulars is not typically warranted in so far as it seeks information already available through other sources") (citing United States v.

24

Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) ("Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection.")); see also United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995) (bill of particulars is not necessary when indictment is sufficiently specific and the defendant has access to the government's file); United States v. Caputo, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (same); United States v. Cooper, 283 F. Supp. 2d 1215 (D. Kan. 2003) (same). As the Government outlines, Defendant was provided with a wealth of information in discovery, which was organized in a manner to facilitate examination, to enable her to adequately prepare for defense of the charges at trial. Information about all of the no-bid contracts awarded by Defendant has been produced. The bank records for TSS, TGI and Defendant's personal accounts have been produced - as well as for other businesses with a connection to Defendant. The discovery includes reports of interviews with co-Defendant Ellis and others involved or possibly involved with the charged offenses. [Doc. 37 at 5-6]. The court finds that the information sought by Defendant has been produced, only not identified as in response to a specific request.

25

Furthermore, Defendant seeks the details about the acts in which *she* engaged in commission of the charged offenses.  It is doubtful that Defendant could establish that, without the Government providing the details about this evidence, she was not able to prepare a defense to the charged offenses or was surprised.  In a case where the evidence being sought by a bill of particulars consists of activities in which a defendant participated or witnessed, the defendant "'could hardly have been surprised by the government's proof at trial.'"  United States v. Cantu, 557 F.2d 1173, 1178 (5th Cir. 1977) (quoting United States v. Pena, 542 F.2d 292, 293-94 (5th Cir. 1976)); see also United States v. Williams, 113 F.R.D. 177, 179 (M.D. Fla. 1986) (When the information sought involves "events in which one or more of the defendants participated, or which occurred in one or more of the defendants' presence[, t]he Eleventh Circuit has held that this sort of information need not be furnished in a bill of particulars.") (citations omitted).  Quite frankly, Defendant knows the vendor(s) from whom she received kickbacks, when those kickbacks occurred and the amount of the kickbacks, and she knows which contracts she fraudulently certified were completed in connection with the scheme to defraud GDD.

26

In this case, Defendant is seeking evidentiary detail to which she is not entitled in a bill of particulars.  See Roberts, 174 Fed. Appx. at 477 (a bill of particulars "'is not designed to compel the government to detailed exposition of its evidence'") (citation omitted); United States v. Scrushy, 2004 WL 483264, at *9 n.5 (N.D. Ala. March 3, 2004) ("[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge.  The function of the bill of particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law.  It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original); United States v. Giffen, 379 F. Supp. 2d 337, 346 (S.D. N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense.").  The requests for specific acts and dates sought in Defendant's motion exceed the scope of a bill of particulars, and based on the circumstances of this case, the information sought is not necessary "to inform [Defendant] of the charge[s] against [her] with sufficient precision to allow [her] to prepare [her] defense, to minimize surprise at trial, and to enable [her] to plead double

27

jeopardy in the event of a later prosecution for the same offense[s]." Warren, 772 F.2d

at 837.

And the cases cited by Defendant do not alter this court's conclusion.  In Cefalu,

the court ordered the Government to provide a bill of particulars identifying for the

defendant the names of the jurors, out of the hundred or more on the jury panels

involved, allegedly influenced, intimidated or impeded.  234 F.2d at 524.  In doing so,

the court noted that the "indictments in these cases each charged in general terms all

of the essential elements of the crimes laid in several counts . . . but in very general

language." Id.  As the Government notes [Doc. 37 at 6-7], the indictment in this case

provides specific details to Defendant about the conspiracy charged in Count 1 which

has been supplemented by the discovery provided to Defendant.  And Defendant's

reliance on the decision in Finazzo, as the Government notes, is not borne out by the

hearing transcript explaining the district court's decision.  [Doc. 37 at 7].  Besides a

passing reference to the district court's decision to grant the defendant's bill of

particulars, Finazzo, 2011 WL 3794076, at *1, the written decision concerns other

matters pending before the court.  However, the transcript of the hearing at which the

bill of particulars decision was made indicates that the indictment as drafted created

ambiguity in the nature of the charged fraud offense.  This ambiguity was made all the

28

more murky by the prosecutor's statements about the manner and means by which the fraudulent scheme was transacted and would be proved at trial which conflicted with the language in the indictment. This confusion and ambiguity formed the basis for the court to order the bill of particulars. [Doc. 37, Attachment, Transcript of Hearing, Dated December 8, 2010]. In this case, the indictment is not ambiguous, and the Government has not presented conflicting and confusing explanations about the nature of the scheme underlying the charged conspiracy.

For these reasons, the court **DENIES** Defendant's motion [Doc. 29] for a bill of particulars, except for the request that the Government provide the names of unindicted co-conspirators.

## III.   Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 28] for severance be **DENIED** and **DENIES** the motion [Doc. 29] for a bill of particulars, except for the request that the Government provide the names of unindicted co-conspirators.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

29

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial as to Defendant Raytosha Elliott.[4]

**IT IS SO ORDERED AND RECOMMENDED** this 27th day of May, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[4]Defendant Lakeysha Ellis pled guilty on March 27, 2014.  [Doc. 32].

30